UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**CORMIE'S GROCERY & DELI, INC.** : **CIVIL ACTION NO. 12-562**
**D/B/A CORMIE'S GROCERY**

**VERSUS**

: **JUDGE TRIMBLE**

**COLONY INSURANCE COMPANY,**
**MIKE DEMARIE, and**
**MIKE DEMARIE INSURANCE**
**AGENCY, INC.** : **MAGISTRATE JUDGE KAY**

## MEMORANDUM RULING

Before the court is a Motion to Remand [doc. 8] filed by plaintiff Cormie's Grocery, Inc. a Louisiana domiciliary ("the plaintiff"). The motion is opposed on equivalent grounds by defendants, Colony Insurance Company, a corporation both incorporated and headquartered in Virginia ("Colony"), and co- defendants Mike Demarie, and Mike Demarie Insurance Agency, Inc. (together "Demarie"). Colony has also filed a Motion to Strike [doc. 13]. For the reasons set forth herein, the defendant's Motion to Strike [doc. 13] is hereby **GRANTED** and the plaintiff's Motion to Remand [doc. 8] is hereby **DENIED**.

I.

BACKGROUND

*A. Facts*

The plaintiff in this case, Cormie's Grocery & Deli, Inc., is a family owned corporation and grocery business operated by Christopher Cormie and his wife Tabitha. Mr. Cormie acquired ownership from his father in 2008. Mike Demarie and Mike Demarie Insurance Agency, Inc.,

-1-

both Louisiana domiciliaries, had provided insurance coverage and services to Cormie's Grocery for many years preceding its transfer to Christopher and Tabitha. Doc. 8, att. 2, p. 1. Though neither Christopher nor Tabitha had ever owned a business prior to said transfer, Chistopher had "worked for his [father] for many years before he and his wife [became the owners]". Doc. 16, p. 5.

On June 24, 2011 Cormie's Grocery was forced to close indefinitely after a fire caused substantial damage to the building. Subsequently, Christopher submitted a claim to the defendant for loss of business income which was later denied on grounds that Cormie's Grocery lacked the requisite coverage for such loss. Doc. 1, att. 5, p. 6.

### B. *Procedural History*

On March 2, 2012, the plaintiff filed a Petition for Damages [doc. 1, att. 5] in state court stating causes of action against Colony and Demarie alleging *inter allia* negligence and negligent misrepresentation by Demarie. Colony promptly filed a Notice of Removal [doc. 1]. In said notice Colony claims this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as plaintiff and Colony are diverse of citizenship and the amount in controversy exceeds $75,000. Colony further claims that plaintiff has failed to state a cognizable claim against Demarie who, Colony claims, was improperly joined and whose citizenship therefore should be ignored. Doc. 1, p. 5.

Thereafter the plaintiff filed its Motion to Remand [doc. 8] asserting that Demarie "became a special advisor" to the plaintiff by assuming an affirmative duty to procure for the plaintiff the proper amount of coverage via Demarie's special knowledge of and long-standing relationship with Cormie's Grocery. Doc. 8, att. 1, p. 5-6. In addition, the plaintiff alleges that Demarie, having assumed such duty, negligently and "unequivocally" misrepresented to the

plaintiff the extent and amount of its insurance coverage and that Christopher and Tabitha detrimentally relied upon said misrepresentation. Doc. 8, att. 1, p. 7.

### C. The Evidence and Claims

Attached to plaintiff's Motion to Remand are two documents which it claims establish "**a record of specific misrepresentations**" by Demarie to Chistopher and Tabitha (emphasis in original). *Id*. The evidence consists first of an affidavit given by Christopher Cormie ("the affidavit") [doc. 8, att. 2] which essentially mirrors and purports to substantiate the plaintiff's argument with respect to Demarie's "special relationship" to the plaintiff. Also included is a handwritten note [doc. 8, att. 3] containing several figures alleged to be policy limits which the plaintiff claims were to be paid to Christopher and Tabitha for their losses after the fire. It is averred by the plaintiff that the handwriting contained in the note is that of Mike Demarie. No signatures are provided on the note.

Colony filed a Motion to Strike [doc. 13] both the affidavit and the handwritten note arguing that the affidavit is not based on personal knowledge as required by Federal Rule of Civil Procedure Rule 56(c)(4) and that the note is unauthenticated under Federal Rule of Evidence 901. In its response to the defendant's motion to strike, the plaintiff contends that only a reasonable inference of personal knowledge is adequate to support an affidavit and that Demarie's special relationship with the plaintiff was sufficient to satisfy such an inference. Doc. 16, p. 4-5. Furthermore, the plaintiff argues that because the affidavit is adequate, it provides the requisite authentication for the handwritten note[1]. Doc. 16, p. 6. Colony avers that the affidavit

---

[1] The Federal Rules of Evidence, provide that authentication of an item of evidence requires that a proponent produce "sufficient evidence to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901(a).

is inadequate because it is not based on personal knowledge but merely on "what the affiant believes he needs the facts to be in order to support [remand]." Doc. 12, p.2.

Colony claims that the plaintiff has failed to establish the existence of a "special relationship" between Cormie's Grocery and Demarie and thus has no claim against Demarie upon which relief may be granted since Demarie had no duty to procure any specific type or amount of insurance coverage for Cormie's Grocery. Accordingly, Colony avers that Demarie has been improperly joined as a defendant in this case, and that his non-diverse citizenship must therefore be ignored, allowing this litigation to proceed in federal court pursuant to 28 U.S.C. § 1332.  Doc. 12, p.8-9.

## II.

## LAW AND ANALYSIS

It is well-established under the improper joinder doctrine that if a court finds that a party has been improperly joined in order to destroy the diversity necessary for a Federal Court to exercise its constitutionally limited jurisdiction, the citizenship of the improperly joined party may be disregarded thus allowing the case to proceed.  In order to succeed on a claim of improper joinder, the defendant must show 1) actual fraud in the pleading of jurisdictional facts or 2) a plaintiff's inability to establish a cause of action against the non-diverse party in state court". *Cuevas v. BAC Home Loans Servicing, LP.*, 648 F.3d 242, 250 (5th Cir. 2011) (citing *Smallwood v. Ill. Cent. R.R. Co.*, 385 F. 3d 568, 573 (5th Cir. 2004).  More specifically stated, a court must determine if there is a reasonable basis for a court's prediction that a plaintiff might recover against the non-diverse party in question. *Id*.  A court's discretion in determining the improper joinder question may "pierce the pleadings" to uncover facts that would prevent a plaintiff's recovery. *Smallwood*, 385 F. 3d. at 573-74.  Thus, the primary issue before this court

is whether the plaintiff would have a cause of action against Demarie in a Louisiana state court such that the doctrine of improper joinder would not be triggered, thus defeating the defendant's removal and making remand proper.

The plaintiff in this case has leveled claims of negligence and negligent misrepresentation against Demarie. In Louisiana viable claims of negligence are assessed using the duty-risk approach which requires determinations as to 1) whether there was a duty owed, 2) whether that duty was breeched, and 3) whether the resulting injury was within the scope of the risk of that breech. *Hill v. Lundin & Associates, Inc.*, 256 So.2d 620 (La. 1972); *Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co.*, 137 So.2d 298 (La. 1962). In *Pitre v. Opelousas General Hosp.*, 530 So.2d 1151 (La. 1988), Justice Dennis notes:

> The duty risk approach is most helpful…in cases where the only issue is in reality whether the defendant stands in any relationship to the plaintiff as to create any legally recognized obligation of conduct for the plaintiff's benefit.

*Pitre*, *supra* at 1155 (citations omitted). Since the plaintiff's injury in the case *sub judice* (detrimental reliance) obviously falls within the scope of the risk of Demarie's alleged breach of his alleged duty to procure adequate insurance coverage for Cormie's Grocery, the essential inquiry here, rests primarily on whether Demarie, as an insurance agent, owed such a duty to the plaintiff.

The controlling authority here is found in *Isidore Newman School v. J. Everett Eaves Inc.* 42 So.3d 352, 2009-2161 (La. 7/6/10) which caps a marked trend in jurisprudence and affirms that Louisiana law has never recognized a duty owed by an insurance agent to spontaneously

advise or procure any specific type or amount of insurance coverage for a client.[2]  The court held that the responsibility rests with the insured to read his policy and request the required coverage.[3]  *Isidore*, *supra*.  However, an exception arises when a client shows that "1) the insurance agent **agreed** to procure the insurance; 2) the agent failed to use 'reasonable diligence' in attempting to procure the insurance and failed to notify the client promptly that the agent did not obtain the **requested** insurance; and 3) the agent acted in such a way that the client could assume he was insured." *Id.* at 356-57 (citing *Karam v. St. Paul Fire and Marine Insurance Co.*, 281 So.2d 728, 730-31 (La. 1973) (emphasis added).  The court thus recognizes this narrow exception only when an insured has specifically requested a certain type or amount of coverage and the agent has agreed to procure that coverage.[4]

   Here, the plaintiff presents no evidence that it ever made any inquiry into the status or amount of its insurance coverage, nor does the plaintiff attempt to show that it specifically requested any information regarding said insurance.  In its Motion to Remand, the plaintiff relies on both *Karam*, *supra* and *Isidore*, *supra* for the proposition that an agent owes a duty to advise and procure the requisite amount of insurance coverage to a client.  However, in *Karam*, the insured had requested a specific amount of coverage and the agent admitted both his agreement and failure to procure that requested amount. *Isisdore*, *supra* at 356 (citations omitted).

---

[2] See generally *Smith v. Millers mutual Ins. Co.*, 419 So.2d 59 (La.App. 2 Cir. 1982) (holding that an insurance agent has no duty to make recommendations to his client regarding increases in his personal liability limits); *Graves v. State Farm Auto Ins. Co.*, 01-1243 (La.App. 3 Cir. 6/26/02), 821 So. 2d 769 (holding that an insurance agent has no affirmative duty to inquire into a client's financial condition and make recommendations as to coverage of that client)

[3] *Cameron Parish School Bd. v. State Farm Fire and Cas. Co.*, 560 F.Supp.2d 485 (W.D.La.5/19/08).

[4] According to the court in *Isidore, supra* the Fourth Circuit, has given particular weight to this proposition. See *City Blueprint & Supply Co., Inc. v. Bob Boggio, et. al.*, 08-1093 (La.App. 4 Cir. 12/17/08), 3 So.3d 62 (held that an agent has not duty to inform or advise an underinsured client absent a specific question from that client…and that the client is responsible for reading the policy and is thus presumed to know its terms.); *Heidingsfelder v. Hibernia Insurance, L.L.C.*, 09-0753 (La.App. 4 Cir. 11/18/09), 25 So.3d 976 (holding that an insurance agent does not have an 'independent duty' to spontaneously advise clients on coverage.)

Likewise, in *Isidore*, *supra* the court rejected the argued proposition specifically on the grounds that the Isidore Newman School had "never requested" a specific type or amount of coverage. *Id*. at 359.

In *Offshore Production Contractors, Inc. v. Republic Underwriters Insurance Company*, 910 F.2d 224, 230, (5th Cir. 1990), a case upon which the plaintiff heavily relies, the court noted that

> Where an agent is familiar with the insured's business, has reason to know the risks against which an insured wants protection, and has experience with the types of coverage available in a particular market, we must construe an undertaking to procure insurance as an agreement by the agent to provide coverage for the client's specific concerns.[5]

*Offshore*, *supra* at 230 (citations omitted). While it is arguable that the holding in *Offshore* acknowledges an agent's duty via a special relationship, the facts indicate that the notion of a special relationship is based on special knowledge with respect to a particular field, industry, or market. In *Offshore*, Peter Barbara, an insurance agent who specialized in servicing oil companies, had worked with Offshore Production Contractors (OPC) for many years and had had at least 30 years experience in the insurance industry. Consistent with his standard practices and usual business dealings with OPC, Barbara met with OPC's CEO and made recommendations for the acquisition of a blanket builder's risk policy which OPC later accepted on the condition that the policy include a stand-by clause that would cover the company in case

---

[5] The court cites a sting of cases that support this proposition. See generally *Durham v. McFarland, Gay and Clay Inc.*, 527 So.2d 403 (Insurance agent knew client needed flood insurance); *Cusimano v. St. Paul Fire & Marine Insurance Co.*, 405 So.2d 1382 (Agent knew insured wanted coverage of a certain amount and therefore owed a duty to client.) In both cases, evidence is proffered that the clients had explicitly expressed their desire to the agent for a specific type or amount of insurance and their requests were agreed to. In *Durham, supra* the plaintiff offered "emphatic" testimony that he had specifically requested flood insurance which the agent then confirmed on cross-examination. In *Cuisimano*, *supra* the court noted that the client had made a telephone request for additional coverage and had not received that requested coverage.

of downtime due to bad weather.[6]  Barbara helped draft the policy which, after several revisions, ultimately did not include the desired coverage.  Suit was filed when OPC's insurance claim was denied following losses incurred due to inclement weather in the Gulf of Mexico which had effectively prevented OPC's operations there for nearly one month.  The record indicated that Barbara did not provide OPC with a copy of its policy until well after the occurrence of the incident on which its insurance claim was based.  *Offshore*, 910 F.2d at 226-29.  Noting that OPC would not have acquired stand-by coverage if it did not include coverage for potential weather delays, the court pointed out that during meetings with Barbara OPC had expressed concerns over coverage for bad weather and that Barbara had acknowledged those expressions. Through his actions and knowledge of OPC's desires, the court found that Barbara had agreed to procure the desired coverage and by failing to do so was liable to OPC.  *Id*. at 229-30.

In the present case, the plaintiff alleges that Demarie, through his long-standing relationship with Cormie's Grocery, had acquired a special relationship similar to that contemplated in *Offshore*.  The plaintiff claims that Demarie was intimately familiar with the plaintiff's "income, sales, expenses, cash flow, and losses," but fails to point out how such knowledge would constitute "special" knowledge beyond what any insurance agent or agency would know of its clients.  No evidence is provided that Demarie exclusively catered to Cormie's Grocery, or that its services were specialized to the market of grocery establishments. Furthermore, unlike in *Offshore*, there is no evidence to indicate that Demarie failed to provide Christopher and Tabitha with copies of their insurance policy which it was their duty to read. *Blueprint & Supply Co., Inc.* 3 So.3d 62 at 66.

---

[6] A stand-by clause covers loss incurred when damage or other circumstances temporarily prevent an insured's ability to continue work on a project. *Offshore*, 910 F.2d at 227.

As evidence of Demarie's special relationship the plaintiff offers only the affidavit and handwritten note which it claims constitutes a record of misrepresentation. According to Federal Rule of Civil Procedure 56(c)(4), an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."[7] Though "evidence to prove personal knowledge may consist of the witness's own testimony," it is inadmissible if such personal knowledge is insufficient. FED. R. EVID 602.

Colony contends that Christopher's declarations about what Demarie "knew" and his statements about Demarie's role as a "special advisor" could not have been within his personal knowledge. Doc. 8, att. 2, p. 1-2. Citing *DIRECTV, Inc. v. Budden*, 420 F. 3d 521 (5th Cir. 2005), the plaintiff counters arguing that "it is sufficient if personal knowledge can reasonably be inferred" and defines such personal knowledge as that which "falls within the affiants 'sphere of responsibility' as a corporate employee." Doc. 16, p. 3.

The plaintiff further contends that Christopher's intimate involvement with Cormie's Grocery as the son and grandson of its former proprietors is a sufficient factual basis for this court to conclude that a reasonable inference of personal knowledge existed. The argument is unpersuasive. Though Christopher, as a corporate owner of Cormie's Grocery, would have personal knowledge as to its regular business dealings, his "sphere of responsibility" does not extend to knowledge held by Demarie. Consequently, Christopher does not have personal knowledge of Demarie's state of mind. The portions of the affidavit relating to a special relationship are thus invalid and should be stricken.

---

[7] In response to the defendant's motion to strike, the plaintiff distinguishes between requisite evidence for summary judgment and requisite evidence for remand but fails to elaborate on the distinction. It is well established that in rendering decisions on motions to remand, courts should "pierce the pleadings" and consider "summary judgment-type evidence such as affidavits." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F. 3d 568 (5th Cir. 2004).

Furthermore, nothing in the affidavit provides for the authentication of the handwritten note itself. Though Christopher broadly attests to "specific misrepresentations in writing," he provides no statement as to whether those misrepresentations were the same as those provided in the handwritten note. It is the opinion of this court that such discrepancies render the affidavit insufficient to show that Demarie agreed to procure any particular coverage. Additionally, the affidavit provides no evidence that Christopher or Tabitha ever specifically requested a particular amount or type of insurance. Doc. 16, p. 6. Accordingly, the handwritten note, even if it was authenticated, is not sufficient to persuade this court that Demarie owed a duty to the plaintiff.

Under Louisiana law as recently affirmed by the Louisiana Supreme Court in *Isidore*, *supra*, an insurance agent has no duty to advise, recommend, or procure for its client any specific amount or type of coverage unless the client requests the same and the agent agrees to do so. Furthermore, the client is responsible for reading the policy received and for assessing the amount and type of coverage needed. *Isidore*, *supra* at 359). Since Demarie had no duty to independently advise the plaintiff in this case, the plaintiff's claims for negligence and negligent misrepresentation are not actionable. Additionally, there is a lack of credible evidence substantiating the exception of a special relationship between the plaintiff and Demarie. Therefore, there is no "reasonable basis" for this court to predict that Cormie's Grocery might recover against Demarie. *Smallwood*, 385 F. 3d at 573.

Colony has thus succeeded in showing the plaintiff's improper joinder of Demarie by establishing the plaintiff's "inability to establish a cause of action against the non-diverse party in state court." *Id.* As a party improperly joined Demarie's non-diverse citizenship can be ignored. Since diversity thus exists between the parties, this case falls within the proper jurisdiction of this court under 28 U.S.C. § 1332.

## **CONCLUSION**

For the reasons set forth above, the defendant's Motion to Strike [doc. 13] is hereby **GRANTED** and the plaintiff's Motion to Remand [doc. 8] is hereby **DENIED**.

THUS DONE AND SIGNED in Chambers this 16th day of July, 2012.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE